# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |  |
|---|---|
| ALBERT SPAN,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE *et al.*,<br><br>    Defendants. | Civil Action No. 08-2183 (HHK) |

**MEMORANDUM OPINION**

Albert Span, proceeding *pro se*, brings this case pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a. Before the Court is the motion for summary judgment filed by the defendants, the Federal Bureau of Investigation ("FBI") and the Department of Justice ("DOJ"). Upon consideration of the motion, the opposition thereto, and the record of the case, the Court concludes that the motion should be granted.

## I. BACKGROUND

Span, allegedly a member of the "Black Disciples" gang operating in the Chicago area, was convicted of federal narcotics and firearms violations and is now serving a life sentence without possibility of parole. Compl. ¶ 19; Pl.'s Opp'n at 1-2. In October 2006, Span submitted a FOIA request to the FBI's Chicago Field Office seeking information in the "FBI I-Drive files about my case, No. 03-cr-71 and the affidavit and complaint of the charging agents. Authorization for the wiretap in this case and court orders of the taps." Defs.' Mot. for Summ. J.

("Defs..' Mot."), Decl. of David M. Hardy (Feb. 27, 2009) ("Hardy Decl.") ¶ 6 & Ex. A (punctuation altered). In response to Span's request, the Chicago Field Office conducted a search of the general indices, which are automated, to its files in the central records system ("CRS") in order to identify all potentially responsive files indexed to "Albert Lee Span." Hardy Decl. ¶¶ 25-32 (describing what is included in the CRS and how it is indexed and searched). That search located just one such file, identified as No. 245D-CG-107276. *Id.* ¶ 32.

In FBI FOIA nomenclature, this was a "main" file, which is a file that is identified by the "name corresponding with a subject of a file." *Id.* ¶ 27. In other words, a "main" file for Albert Span is one that is identified by the name Albert Span and has Albert Span as its subject matter. In this case, the one main file was a "multi-subject file" and the FBI's search addressed "only that portion which specifically pertains to the plaintiff rather than information pertaining to other subjects." *Id.* ¶ 39. While an individual may also be mentioned in a file that is not about that individual, a so-called "reference" or "cross-reference" file, the current FBI policy is to search only "main" files — that is, files about the individual — when initially responding to a FOIA request. *Id.* ¶¶ 27, 35. The FBI's letters to Span did not inform him of this policy or that the initial search in response to his FOIA request was limited to "main" files.

The FBI determined that the one main file it had identified as responsive, No. 245D-CG-107276, "was located in a pending investigative file" and therefore was exempt from disclosure under FOIA Exemption 7(A), 5 U.S.C. § 552(b)(7)(A). *Id.* ¶ 32. Span appealed the FBI's determination that all records were exempt from disclosure. On appeal, DOJ's Office of Information and Privacy ("OIP") determined that "Exemption 7(A) no longer applied to [a]

portion of the records responsive to plaintiff's request," and remanded the request to the FBI for further processing. *Id.* ¶ 11.

When Span filed his appeal with the OIP, the FBI searched further in the Chicago Field Office and located a responsive "reference" file for Span. *Id.* ¶ 33. As a result of its review of the reference file and its further review of the main file on remand, the FBI identified 50 pages that were responsive to Span's request and not subject to Exemption 7(A), and in May 2008 released 32 of the 50 pages in full or in part. *Id.* ¶ 16. The FBI's production to Span included the following statement:

> For your information, additional material which might possibly be responsive to your request is presently unavailable. This material includes FBI Chicago field office file number 245D-CG-107276 serials 319, 368, 471, 695, and 696.

*Id.* Ex. K. No further explanation was offered to Span at that time regarding the records that were "presently unavailable." It turns out that for some time the FBI could not locate the identified portions (serials 319, 368, 471, 695, and 696) of the main file indexed to Albert Span. After Span filed this lawsuit, the FBI searched again and located the missing portions. *Id.* ¶ 36. The previously missing portions contained 21 responsive pages, of which 14 were released in full or in part. *Id.* Ex. O.

In July 2008, Span made a second FOIA request, this time to FBI headquarters seeking

> any and all documents, records, memoranda, statements, reports, and other information (in whatever form) maintained by your agency that relates to or makes reference to me directly or indirectly. More specifically, I request any information in the possession or control of your agency related to the investigation and prosecution of me by federal authorities for illegal gang activity and narcotics trafficking in and around the Chicago, Illinois area from on or about January 2001 to the present. Any information would include, but not be limited to, agency reports, statements (302's), files, notes, case file summaries, or any other forms of

> data maintained and/or generated by your agency related to the above referenced criminal investigation.
>
> I specifically request that your agency search the Central Records System, Automated Case Support System, Electronic case Files, Universal Index Files, Legal Attaches (LEGATS), investigative Case Management System, Confidential Source System, and the "I-Drive" system files. Any "main" or "references" to me would be responsive to my request. I would expect advisement if any field office maintained any records responsive to this request.

Hardy Decl. Ex. P. In response to Span's second request, the FBI conducted a search of the FBI headquarters' general indices of its main files in the CRS and found no files where Span was the subject of the file. *Id.* ¶¶ 34, 35. After Span initiated this lawsuit, the FBI also searched its reference files and identified one that contained a reference to Span. That file was referred to the BOP for review and direct release to Span. *Id.* ¶ 35. Span does not raise any issues with respect to the FBI's determination to refer that file to the BOP or to the BOP's review and release decisions.

In sum, the FBI conducted multiple searches of both main and reference files by use of the Automated Case Support System ("ACS") general indices that make a search of its CRS possible. *See id.* ¶ 27. These searches produced a total of 71 responsive records, of which 64 were released to Span in full or in part. Span challenges the searches on the ground that they did not produce what he believes is a "vast respository of information in the possession/control of the Defendants that the FBI is concealing," Opp'n at 11, and that the FBI did not search the exact files, and specifically the I-drive, that Span requested be searched, *id.* at 10. He also challenges the FBI's assertion of Exemptions 2 and 7(D), to protect the identity of and information provided by confidential sources, of Exemptions 6 and 7(C), to protect third parties' privacy, and Exemptions 2 and 7(E), to protect information relating to law enforcement investigative

techniques and procedures. *Id.* at 11-12. In addition, Span generally attacks the agency affidavits by conclusorily alleging bad faith. *Id.* at 5-6. In fact, except that the name of the declarant has been tailored to the case, the allegations are so general and conclusory that they are an identical recitation of allegations made by a plaintiff in another, urelated, FOIA suit. *See King v. DOJ,* No. 08-cv-1555 (HHK) Opp'n at 5-6 (D.D.C. Sept. 23, 2009) (alleging bad faith with respect to the declaration made on behalf of the Drug Enforcement Administration).

## II. ANALYSIS

A motion for summary judgment under Rule 56 must be granted if the pleadings and evidence on file show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986). In considering whether there is a triable issue of fact, a court must draw all reasonable inferences in favor of the non-moving party. *Liberty Lobby,* 477 U.S. at 255. The party opposing a motion for summary judgment, however, "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial," Fed. R. Civ. P. 56(e)(2), that would permit a reasonable jury to find in his favor, *Laningham v. U.S. Navy,* 813 F.2d 1236, 1241 (D.C. Cir. 1987). The non-moving party must do more than simply "show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Moreover, "any factual assertions in the movant's affidavits will be accepted as being true unless [the opposing party] submits his own affidavits or other documentary evidence contradicting the assertion." *Neal v. Kelly,* 963 F.2d 453, 456 (D.C. Cir.1992) (quoting *Lewis v. Faulkner,* 689 F.2d 100, 102 (7th Cir.1982)). In a FOIA suit, an agency is entitled to summary

judgment once it demonstrates that no material facts are in dispute and that it conducted a search of records in its custody or control, *Kissinger v. Reporters Committee for Freedom of the Press,* 445 U.S. 136, 150-51 (1980), that was reasonably calculated to uncover all relevant information, *Weisberg v. Dep't of Justice,* 745 F.2d 1476, 1485 (D.C. Cir. 1984), which either has been released to the requestor or is exempt from disclosure, *Students Against Genocide v. Dep't of State,* 257 F.3d 828, 833 (D.C. Cir. 2001).

A. Allegations of Agency Bad Faith

An agency declaration is entitled to a presumption of good faith. *SafeCard Servs., Inc. v. SEC,* 926 F.2d 1197, 1200 (D.C. Cir. 1991). Speculative claims about the existence of additional documents are insufficient to rebut the presumption of good faith accorded agency affidavits. *Flowers v. IRS*, 307 F. Supp. 2d 60, 67 (D.D.C. 2004). To successfully challenge an agency's showing that it complied with the FOIA, the plaintiff must come forward with "specific facts" demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld extant agency records. *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989). Span's boilerplate allegations of bad faith do not constitute the "specific facts" required to threaten the good faith presumption. On this record, the agency affidavits are entitled to the presumption.

B. The Searches

To show that its searches for responsive records "us[ed] methods which can be reasonably expected to produce the information requested," *Oglesby v. Dep't of the Army,* 920 F.2d 57, 68 (D.C. Cir. 1990); *see also Campbell v. Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998), the agency may submit affidavits or declarations that explain in reasonable detail and in a

nonconclusory fashion the scope and method of the search, *Perry v. Block,* 684 F.2d 121, 126 (D.C. Cir. 1982). In the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance with the FOIA. *Perry,* 684 F.2d at 127. A search need not be exhaustive, *Miller v. Dep't of State,* 779 F.2d 1378, 1383 (8th Cir. 1985), and the adequacy of a search is not determined by its results, but by the method of the search itself, *Weisberg,* 745 F.2d at 1485. An agency's failure to find a particular document does not necessarily indicate that its search was inadequate. *Wilbur v. CIA,* 355 F.3d 675, 678 (D.C. Cir. 2004); *Nation Magazine v. U.S. Customs Serv.,* 71 F.3d 885, 892 n.7 (D.C. Cir. 1995).

Span contends that the searches were deficient because they did not include a search of the exact file systems, and specifically the I-drive, as he had requested. Opp'n at 10. The FBI's I-drive is a shared drive in its computer network that is used by FBI field offices to hold "'preliminary work product investigative documents'" drafted by an agent so that a supervisor can review and approve the document before placing it in the FBI's official file. *Amuso v. Dep't of Justice,* 600 F. Supp. 2d 78, 88 (D.D.C. 2009) (quoting a declaration by David M. Hardy); *see also Jefferson v. Bureau of Prisons,* No. 05-848 (GK) 2006 WL 3208666 *6 (D.D.C. Nov. 7, 2006) (citing letter of David M. Hardy explaining the I-drive); *Antonelli v. Bureau of Alcohol, Tobacco, Firearms & Explosives,* No. 04-cv-1180 (CKK), 2006 WL 367893, at *7 (D.D.C. Feb. 16, 2006) (same). In other words, the I-drive is intended to hold, temporarily, draft documents that when finalized become part of the CRS. Given that Span was tried in late 2004, *see U.S. v. Span,* 188 Fed. Appx. 487, 489 (7th Cir. July 14, 2006), there is good reason to conclude that no documents responsive to his information request would be found on an I-drive in 2006 or later. Furthermore, it is not even clear that the Chicago Field Office maintains an I-drive, as some field

offices now have a shared drive that is identified by some other letter. *Amuso,* 600 F. Supp. 2d at 88 (citing Hardy's declaration).

These facts illustrate why the law does not require an agency to conform its search to the dictates of a requester, but rather to conduct a search that is reasonably expected to produce the information requested.[1] Where, for example, the information requested may be reasonably expected to be found on the I-drive, the agency could ignore such a specific request only at its peril. Where, however, there is no reasonable expectation that the information requested could be located by searching the I-drive, the law does not obligate the agency to conform its search to the dictates of the requester. The Hardy Declaration filed in this case specifically states that "the FBI conducted a search of the [Chicago Field Office] indices to the CRS to identify all potentially responsive files indexed to Albert Lee Span," and that "the FBI conducted a search of the FBI headquarters indices to the CRS to identify all potentially responsive files indexed to Albert Span." Hardy Decl. ¶¶ 32, 34. Span has not offered any specific facts to support a conclusion that the FBI's decision not to search its I-drive was unreasonable or fell short of the requirements of the law to conduct a search that is "reasonably expected to produce the information requested." *Oglesby,* 920 F.2d at 68. Furthermore, a careful examination of the agency's description of the CRS indicates that it would have been redundant to search the various file systems mentioned in Span's 2008 FOIA request to FBI headquarters, as they are all part of

---

[1] Span's cites *Public Citizen v. Dep't of State,* 276 F.3d 634 (D.C. Cir. 2002) and *Antonelli,* 2006 WL 367893, in support of the proposition that an agency is obligated by law to search specific files if so requested by the requester. His reliance is misplaced. *Public Citizen* did not even obliquely address this issue, and *Antonelli* merely stated that "[a]bsent plaintiff's specific request for a search of the hard drives, defendant had no obligation under the FOIA to search them." *Antonelli,* 2006 WL 367893, at *7. The court in *Antonelli* did not indicate that a specific request alone was sufficient to obligate the agency to search where requested.

the CRS.  *Compare* Hardy Decl. ¶¶ 26-31 (describing CRS and its related systems) *with* Span's 2008 FOIA Request, *id.* Ex. P.

Span also maintains that it is "incredulous" that the search was adequate in light of the relatively small number of records located in response to his request.  Opp'n, Attachment 1, Pl.'s Decl. of Disputed Material Facts (Mar. 23, 2009) ("Pl.'s Decl.") ¶ 1.  He argues that "common sense would suggest that the FBI's Chicago Field Office should have more than 50 pages of documents related to someone the DOJ claims to have controlled a section of the Chicago metropolitan area, and was a leader of a notorious Chicago street gang known as the Black Disciples."  Opp'n at 8-9 (punctuation and capitalization altered).  Given that Span is not entitled to records about other persons, as those are protected under various provisions of the Privacy Act and/or the FOIA, and that the FBI is but one of multiple DOJ components that might have created and maintained records in the investigation leading to Span's prosecution, his invocation of common sense is not persuasive as a basis on which to conclude that the agency's search was inadequate.  In any case, the law holds that "[t]he results of a search do not determine whether the search is adequate."  *Amuso,* 600 F. Supp. 2d at 89.  Rather, the adequacy of a search is determined by its methods.  *Weisberg,* 745 F.2d at 1485.  On this record, the FBI has established that it conducted searches that were reasonably expected to produce the information requested.

B. *The Exemptions Asserted*

The FBI has asserted FOIA Exemptions 2, 6, 7(C), 7(D), and 7(E) as justification for specific withholdings.  Hardy Decl. ¶¶ 41, 43; *see* 5 U.S.C. §§ 552(b)(2), (b)(6), (b)(7)(C), (b)(7)(D), and (b)(7)(E).  Span interposes general, not specific, challenges to the use of these

exemptions. He also argues that the circumstances require an index of exemptions, *see* Opp'n at 7, 11, and an *in camera* review of the documents, *see* Compl. at 8.

An agency's explanation for withholding information under FOIA exemptions must meet two requirements. First, it must "specifically identify[] the reasons why a particular exemption is relevant," and second, it must "correlat[e] those claims with the particular part of a withheld document to which they apply." *Mead Data Cent., Inc. v. Dep't of the Air Force,* 566 F.2d 242, 251 (D.C. Cir. 1977); *see Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973). Any agency may, but is not required to, meet these requirements by developing an index. "[I]t is the function, not the form, of the index that is important." *Keys v. Dep't of Justice,* 830 F.2d 337 (D.C. Cir. 1987). Whatever form the explanation takes, it must be clear enough to allow a *de novo* review of its application of the exemptions. 5 U.S.C. § 552(a)(4)(B). Although a court may conduct an *in camera* review, because it requires effort and resources . . . a court should not resort to it routinely on the theory that 'it can't hurt.'" *Ray v. Turner*, 587 F.2d 1187, 1195 (D.C. Cir. 1978). "If a district court believes that an *in camera* inspection is unnecessary to make a responsible *de novo* determination on the claims of exemption, it acts within its broad discretion by declining to conduct such a review." *Juarez v. Dep't of Justice,* 518 F.3d 54, 60 (D.C. Cir. 2008) (internal quotation marks and citations omitted).

To protect the identity of confidential sources ("CS"), including the agency's numerical code identifying a particular CS, and the information gleaned from that CS, the FBI conjointly asserts Exemptions 2 and 7(D). Exemption 2 protects information "related solely to the internal . . . practices of an agency." 5 U.S.C. § 552(b)(2). Exemption 7(D) applies to "information compiled for law enforcement purposes," that "could reasonably be expected to disclose the

identity of a confidential source . . . [or] information furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D). On their face, these exemptions justify withholding the agency's assigned identification code number for a CS, and the information that was gleaned from the CS. The FBI asserts Exemptions 6 and 7(C) together to withhold information about persons other than the plaintiff if disclosure would constitute a "clearly unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(6), or — for records compiled for law enforcement — if disclosure would constitute an unwarranted invasion of personal privacy, 5 U.S.C. § 552(b)(7)(C). Again, the application of these exemptions appears justified on their face.

Span asserts the public domain exception to these exemptions and argues that "[a]ll of the information that the FBI is trying to keep from plaintiff has previously been released into the public domain via judicial proceedings, or the FBI and the U.S. Attorney's Office leaking information to the media to prejudice plaintiff's criminal trial proceedings." Opp'n 12 (applying this same argument to the use of Exemptions 6 and 7(C)); *see also id.* at 13 (applying this argument to the use of Exemption 7(D)); Pl.'s Decl. ¶ 3 (stating that the information contained in the "heavily redacted" form 302's "has already been released to the public domain via civil, criminal, judicial proceedings, newspapers, websites and other media outlets . . . ."). Of course, Span has no way of knowing whether all the redacted information is in the public domain, as he does not know what is in the undisclosed records. In any case, Span has not "'point[ed] to specific information in the public domain that appears to duplicate that being withheld,'" as the law requires him to do before a court can find that the exemption has been waived by the public domain doctrine. *Cottone v. Reno,* 193 F.3d at 555-56 (D.C. Cir. 1999) (quoting *Afshar v. Dep't of State,* 702 F.2d 1125, 1130 (D.C. Cir. 1983)). It is the burden of a FOIA plaintiff, not a FOIA

defendant, to identify the "specific information in the public domain that might duplicate that being withheld." *Public Citizen v. Dep't of State,* 276 F.3d 634, 645 (D.C. Cir. 2002) (internal quotation marks omitted). Because Span has not identified any specific information or the"the *exact* portions" of a specific document that is in fact "preserved in a permanent public domain," his public domain challenge fails. *Cottone,* 193 F.3d at 554 (internal quotation marks omitted).

To protect its internal assessment ratings of publicly known law enforcement techniques and procedures, the FBI asserts Exemption 2 in conjunction with Exemption 7(E). Exemption 2, as noted above, exempts from disclosure information that is "related solely to the internal . . . practices of an agency." 5 U.S.C. § 552(b)(2). Exemption 7(E) applies to "information compiled for law enforcement purposes," that "would disclose technics and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure would reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Span argues that the exemption applies only to law enforcement techniques or procedures that are not generally known to the public, and therefore do not apply in his case. *See* Opp'n at 11, 14. His challenge misses the point. The FBI did not withhold information about the techniques or procedures, but only the FBI's own internal assessment of the usefulness of various well-known techniques and procedures in a particular case. *See* Hardy Decl. ¶ 50. As the Hardy Declaration explains, the investigative techniques "are rated numerically to memorialize their effectiveness" and that "[i]f the form contains a numerical rating adjacent to one or more of the listed investigative techniques, all columns of ratings are excised in order to preclude disclosure of both the particular investigative techniques used in the investigation and the effectiveness of the individual techniques." *Id.* An examination of the

released records show that these redactions are fairly described. *See, e.g.,* Hardy Decl. Ex. O at "SPAN-52." The defendants have justified their use of Exemptions 2 and 7(E) to withhold their internal ratings of the techniques and procedures used.

Span's request for an index of the asserted exemptions is frivolous under the circumstances and will be rejected. The FBI produced to Span copies of records that show the precise location and extent of the redaction in context, and that correlate the claimed exemptions with each redaction. A separate index of redactions would not only be redundant of the information he already has, but would provide less, not more, information to him, because the index would remove the context. Span's request for an *in camera* review will also be rejected. In light of the records produced and the agency declaration attaching copies of all responsive records not released in full, a responsible *de novo* review of the asserted exemptions does not require an *in camera* review, and Span has not presented specific facts to show good cause for an *in camera* review. *See Juarez,* 518 F.3d at 60. Aside from these objections, Span does not separately dispute that the defendants produced all segregable information. On this record, there is no reason to doubt the agency's sworn statement that all reasonably segregable information has been segregated and released. Hardy Decl. ¶ 72.

### III. CONCLUSION

A careful review of the entire record and the parties' arguments in this case shows that there is no genuine issue of material fact, and that the defendants are entitled to judgment as a matter of law because they have demonstrated that they conducted searches reasonably expected to produce all relevant information and have either released all non-exempt information or

justified withholding the information. Accordingly, the defendants' motion for summary judgment will be granted. A separate order accompanies this memorandum opinion.

|  |  |
|---|---|
| | HENRY H. KENNEDY, JR. |
| Date: March 22, 2010 | United States District Judge |